UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**PrecisionFlow Technologies, Inc.,**

**Plaintiff-Counter-Defendant**

**-v-**                                                   **1:99-CV-1536**
                                                          **(Lead Case)**

**CVD Equipment Corporation,**

**Defendant- Counter-Claimant; and**

**Stainless Design Concepts, Ltd.,**

**Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**CVD Equipment Corporation,**

**Plaintiff,**

**-v-**                                                   **1:99-CV-2030**
                                                          **(Member Case)**

**Kevin Brady and John Does I-XV,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:                              OF COUNSEL

Heslin Rothenberg Farley & Mesiti         Lee A. Palmateer, Esq.
5 Columbia Circle                         Nicholas Mesiti, Esq.
Albany, New York 12203                    David P. Miranda, Esq.
Attorneys for PrecisionFlow Technologies, Inc.
and Kevin Brady

Galgano & Burke                           Daniel P. Burke, Esq.
300 Rabro Drive, Suite 135                Thomas M. Galgano, Esq.
Hauppauge, New York 11788
and
Hinman, Straub P.C.                       James T. Potter, Esq.
121 State Street
Albany, New York 12207
Attorneys for CVD Equipment Corporation

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER
## INTRODUCTION

In Action No. 99-CV-1536, PrecisionFlow Technologies, Inc. ("PFT") asserts against a competitor, CVD Equipment Corporation ("CVD"),[1] claims sounding in false advertising and commercial disparagement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and related state law claims.  Essentially, PFT, a provider of custom gas and chemical delivery systems and services for computer chip fabrication, claims that CVD falsely represented to others in the industry that goods and services provided by PFT infringed CVD's intellectual property, causing PFT to lose business and suffer damage to its reputation.

In Action No. 99-CV-2030, CVD sues Kevin Brady, President and major shareholder of PFT.  CVD alleges that in 1998 it purchased all assets, including the intellectual property and intangible assets, of Stainless Design Corporation ("SD Corp.") at a secured party public auction. It further alleges that, through Kevin Brady, who had previously been employed by SD Corp., PFT has come into possession of and has been using the SD Corp. intellectual property purchased by CVD at the auction, thus damaging CVD's business.  CVD asserts claims against Kevin Brady for copyright infringement under 17 U.S.C. § 501, and state law claims.  CVD asserts these same claims against PFT in counterclaims in its answer to PFT's complaint in Action No. 99-CV-1536.

The two actions have been consolidated (Action No. 99-CV-1536, Dkt. No. 7).  Action No. 99-CV-1536 is the lead case; Action No. 99-CV-2030 is the member case.  Unless otherwise indicated, all docket numbers used herein refer to the lead case, Action No. 99-CV-1536.

---

[1]

Stainless Design Concepts, Ltd., the other defendant sued by PFT, merged into CVD on April 23, 1999.  There is no need to distinguish the two for purposes of this Memorandum-Decision and Order.

-2-

PFT and Kevin Brady move (Dkt. No. 81) for summary judgment dismissing all claims by CVD and for partial summary judgment holding that CVD is liable to PFT on certain claims.  For the reasons set forth below, the Court denies the motion.

CVD cross-moves (Dkt. No. 105) for summary judgment dismissing all claims by PFT. As set forth below, the Court grants the cross motion in part and denies it in part.

**PFT'S COMPLAINT**

In its complaint (Action No. 99-CV-1536, Dkt. No. 1), PFT states that it is in the business of providing custom gas and chemical delivery systems and services for computer chip fabrication; that CVD is a competitor in the business; and that CVD engaged in a "promotional campaign ... which falsely represents the goods, services, commercial activities and/or business reputation of PFT to existing and prospective purchasers, including ... Lucent Technologies/Icon Dynamics, and other prospective purchasers or existing and/or prospective vendors[.]"

PFT alleges that on July 2, 1999, Lucent Technologies, Inc. ("Lucent"), with which PFT had an ongoing business relationship, requested that PFT quote its price for certain goods and services, specifically the sale and installation of gas cabinets and accessories for computer chip fabrication equipment; that on July 8, 1999, PFT responded with a detailed quotation; that CVD became aware of these facts; and that on July 9, 1999, a representative of CVD stated to a representative of Lucent that PFT could not provide such goods and services because to do so would "infringe the intellectual property of CVD."  PFT avers that CVD had no such intellectual property; that CVD made the statement with knowledge of its falsity or in reckless disregard of its truth or falsity; that CVD made the statement with the intent to disparage PFT's goods and services and to harm PFT's business and reputation; that "but for" the statement, the contract for the goods and services would have been awarded to PFT; and that as a result of the statement, the

contract was awarded to CVD.  PFT's complaint also names International Business Machines Corporation ("IBM"), as an existing and/or prospective purchaser to which CVD made false representations; however, PFT has withdrawn its claims concerning IBM.  PFT further claims that a vendor, Methods Tooling, Inc., refused to provide goods and services to PFT as a result of statements by CVD that legal proceedings against PFT would render PFT unable to pay its vendors.

PFT's first two causes of action are based on section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which provides a civil cause of action to anyone injured or likely to be injured by another's conduct in making a false or misleading representation of fact in commercial advertising or promotion which "misrepresents the nature, characteristics, [or] qualities ... [of its] or another person's goods, services, or commercial activities[.]"  The first cause of action is for false advertising; the second cause of action is for commercial disparagement.

PFT's remaining causes of action are based on New York statutory and common law.  The third cause of action is for false advertising under section 350 of New York General Business Law; the fourth is for commercial disparagement under common law; the fifth is for deceptive acts and practices under section 349 of New York General Business Law; the sixth is for injury to business reputation under section 360-*l* of New York General Business Law; the seventh is for defamation under common law; the eighth is for tortious interference with prospective business relations under common law; the ninth is for tortious interference with contractual relations under common law; and the tenth is for unfair competition under common law.  PFT seeks injunctive relief, an order directing the recall and destruction of all falsely designated materials within the control of CVD, an accounting of CVD's profits, an award of money damages, corrective advertising, costs, and attorney's fees.

## CVD'S COMPLAINT

In its complaint (Action No. 99-CV-2030, Dkt. No. 1) against Kevin Brady in the member case, CVD alleges that since 1983 it has been in the business of, *inter alia*, providing custom gas and chemical delivery systems and services for computer chip fabrication.  In December 1998, at a secured party public auction, CVD purchased from Fleet National Bank all assets of SD Corp.  Before it went out of business, SD Corp. had designed, manufactured, and sold custom gas and chemical delivery systems and, according to CVD, had developed valuable intellectual property in connection therewith.  CVD claims that in purchasing SD Corp.'s assets, CVD acquired all such intellectual property including copyrighted and proprietary technical drawings, software, and operations manuals.  CVD has filed copyright applications and/or obtained copyright registrations in accordance with the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, covering some of the SD Corp. intellectual property it purchased, including technical drawings authored by SD Corp. for a work entitled Silane Delivery System.

CVD further alleges that PFT is a competitor in the business of providing custom gas and chemical delivery systems and services; that the majority of PFT's founding shareholders and a number of PFT's officers and/or employees, including Kevin Brady, were formerly officers and/or employees of SD Corp.; and that while at SD Corp. they had access to the intellectual property subsequently purchased by CVD at the auction of SD Corp.'s assets.  CVD claims that Kevin Brady and others from PFT have copied substantial portions of the Silane Delivery System and other works and have knowingly caused and/or contributed to the infringement of CVD's copyrights therein.  CVD further claims that, through fraud, deception and/or an abuse of their fiduciary relationship with SD Corp., Kevin Brady and others have misappropriated CVD's confidential proprietary information; have wrongfully disclosed CVD's intellectual property to

-5-

PFT, PFT's customers, and/or PFT's prospective customers; and have interfered with CVD's business relations with Lucent by improper means, including providing goods to Lucent embodying CVD's intellectual property, and falsely informing Lucent that PFT was entitled to sell such goods, thereby causing CVD to lose at least one sale.

CVD's first cause of action is for copyright infringement in violation of 17 U.S.C. § 501. CVD has withdrawn the second cause of action, asserting false advertising under section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

CVDs's third, fourth and fifth causes of action, under New York common law, are based on the averment that Kevin Brady and others have caused PFT to market and/or sell products embodying CVD's proprietary and confidential information.  The third cause of action sounds in unfair competition; the fourth sounds in unjust enrichment; and the fifth alleges tortious interference with CVD's prospective business relations.

CVD seeks declaratory relief, injunctive relief, an order requiring the impounding and forfeiture of the infringing products and related materials, an accounting, money damages, corrective advertising, punitive damages, costs, and attorney's fees.

### CVD'S COUNTERCLAIMS

In its answer (Dkt. No. 3) to PFT's complaint in the lead case, CVD asserts the following counterclaims against PFT: first, copyright infringement in violation of 17 U.S.C. § 501; second, false advertising under the Lanham Act § 43(a) (withdrawn); third, common-law unfair competition; fourth, common-law unjust enrichment; and fifth, common-law tortious interference with prospective business relations.  Thus, CVD's counterclaims in the lead case assert against PFT the same claims that CVD's complaint asserts against Kevin Brady in the member action. To simplify the discussion, the Court generally treats CVD's claims against PFT and Kevin Brady

-6-

as if they were set forth in a single pleading.

## MOTIONS – GENERALLY

PFT and Kevin Brady[2] move (Dkt. No. 81) for summary judgment dismissing all claims by CVD, and imposing liability on CVD on five of PFT's causes of action.  Briefly, in arguing for dismissal of CVD's claims, PFT contends that SD Corp. did not possess any protectable rights in the works[3] in issue and that therefore CVD did not obtain any protectable rights when it purchased SD Corp.'s assets.  PFT bases this contention on assertions that the information was not created by SD Corp. and that whatever protectable rights SD Corp. may have had were abandoned, transferred or licensed to third parties.  Therefore, PFT argues, any use of the information by PFT was proper.  PFT further contends that it is entitled to partial summary judgment imposing liability on CVD for false advertising under state and federal law, tortious interference with contract, and/or tortious interference with prospective business relations (causes of action one, three, five, eight, and nine).

CVD cross-moves (Dkt. No. 105) for summary judgment dismissing all of PFT's claims for lack of supporting evidence.  Essentially, CVD argues that PFT has no competent evidence that a representative of CVD made false statements to PFT's customers and/or vendors, nor can PFT prove that any such statements caused PFT to lose business.  CVD also urges that PFT's

---

[2]

Because PFT and Kevin Brady are represented by the same counsel and almost all arguments and issues pertain equally to both of them, the Court refers to both as "PFT" except where it is necessary to distinguish them.

[3]

The intellectual property allegedly purchased by CVD at the auction of SD Corp.'s assets includes drawings, manuals, and software that are allegedly protectable by reason of copyright, trade secret, or other proprietary interest.  For ease of reference, the Court refers to the items in issue as "works," except where specific designations are needed.

claims under sections 349, 350 and 360-*l* of New York General Business Law (causes of action three, five, and six) must be dismissed as a matter of law.

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989).  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See Celotex,* 477 U.S. at 323.

## DISCUSSION

**Generally**

The Court first addresses so much of the motion by PFT and Kevin Brady (Dkt. No. 81) as seeks summary judgment dismissing all claims by CVD.  The issues are discussed in the following order: CVD's cause of action for unfair competition; CVD's cause of action for copyright infringement; CVD's cause of action for tortious interference with prospective business relations; preemption of CVD's claims for unfair competition and unjust enrichment; CVD's false advertising claim under section 43(a) of the Lanham Act; and CVD's claims against Kevin Brady.

The Court then considers so much of PFT's motion as seeks partial summary judgment holding that CVD is liable on PFT's claims of false advertising under state and federal law, and tortious interference with contract and/or with prospective business relations.  Concurrently, the Court considers CVD's cross motion (Dkt. No. 105) to dismiss these claims.

-8-

Finally, the Court addresses the other relief requested in CVD's cross motion, *i.e.*, summary judgment dismissing PFT's claim for injury to reputation and summary judgment dismissing all of PFT's claims for lack of competent supporting evidence.

## I. MOTION BY PFT FOR SUMMARY JUDGMENT

**CVD's Cause of Action for Unfair Competition – PFT's Motion to Dismiss**

*Unfair Competition – Generally*

The Court first considers PFT's motion insofar as it seeks dismissal of CVD's third cause of action against Kevin Brady and third counterclaim against PFT for unfair competition. PFT argues that CVD has no trade secret or other interest that would support a claim for unfair competition.[4] CVD responds that it possesses valid trade secrets and further that, even if the works do not rise to the level of trade secrets, CVD nonetheless has a valid claim for unfair competition based on the improper conduct of PFT in misappropriating CVD's confidential and proprietary works.

Under New York common law, "the essence of unfair competition is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402, 408 (2d Cir. 1997) (citation and internal quote omitted). An unfair competition claim involving misappropriation "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property[.]" *Roy Export Co. v. Columbia Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). CVD points out that New York courts recognize unfair competition claims based on a former employee's

---

[4]

CVD's copyright infringement claims are separately pleaded and are discussed in a separate section.

abuse of his relationship of trust with his employer by misappropriating the employer's confidential information and using it to solicit the employer's customers. *See, e.g., Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 391-92 (1972); *Allan Dampf, P.C. v. Bloom*, 512 N.Y.S.2d 116, 117 (2d Dep't 1987).

To make out a claim for unfair competition based on misappropriation of trade secrets under New York common law, CVD must establish that it possessed a trade secret, and that PFT used that secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *See LinkCo, Inc. v. Fujitsu Ltd.*, 230 F.Supp.2d 492, 497-98 (S.D.N.Y. 2002) (citing *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999) (internal quotation marks omitted)). Under New York law, a trade secret "may consist of any formula, pattern, device or compilation of work which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997) (quoting Restatement of Torts § 757 cmt. b (1939)); *accord Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc*., 920 F.2d 171, 173 (2d Cir. 1990). In determining whether a party possesses a trade secret, New York courts consider various factors including: the extent to which the information is known outside of the business; the extent to which it is known by employees and others involved in the business; the measures taken by the business to guard the secrecy of the information; the value of the information to the business and its competitors; and the amount of effort or money expended by the business in developing the information. *See North Atlantic*, 188 F.3d at 44.

In addressing PFT's unfair competition claim, the Court first considers the evidence bearing on whether CVD has a protectable interest in the works, based on trade secret or some

other confidential property right.  The Court then addresses the related question of whether PFT's use of any protected works was improper.

### *Protectable Interest in the Works  – Discussion*

In PFT's Statement of Material Facts and CVD's response thereto, the parties specify the following works as the property on which CVD bases its claims: Lucent Silane Delivery System Drawings; four Emcore standard gas panel drawings; Lucent and IBM wiring diagrams and drawings; Silane Delivery System Software; IBM Silane Systems Software; Lucent Gas Cabinet Software; IBM Gas Cabinet Software; and IBM Touch Screen Software.[5]  CVD claims that SD Corp. held protectable property rights in these works and that CVD obtained these rights when it purchased SD Corp.'s assets.

Generally, the evidence bearing on whether SD Corp. held protectable property rights in these works falls into the following categories: (1) whether many of the works in issue were created by third parties; (2) whether the works were known outside SD Corp.'s business and whether SD Corp. took measures to guard the secrecy of the works; (3) whether the works were commonly available to SD Corp.'s employees and whether they were treated as confidential; and (4) whether value was placed upon the works by CVD, SD Corp., or others in the industry.  The Court briefly summarizes below some of the relevant evidence on each of these points.

### 1. Whether many of the works were created by third parties

In support of its assertion that many of the works in issue were created by third parties and

---

[5]

In its responses to interrogatories, CVD also asserted that PFT misappropriated a confidential IPA reprocessor.  CVD does not adduce evidence to contradict Kevin Brady's declaration that PFT has never sold an IPA reprocessor and has no plans to do so, nor does CVD address the issue in its memorandum of law.  Thus, to the extent that such a claim was advanced by CVD, it appears to have been abandoned.

were not proprietary to SD Corp., PFT points to the declaration of Kevin Brady, PFT's President and formerly Vice President of Engineering at SD Corp.  According to Kevin Brady, many of the drawings in issue were not created by SD Corp. but rather were provided to SD Corp. by its customers free of charge.  He explains that SD Corp.'s customers typically provided detailed specifications for the equipment they wanted SD Corp. to build.  Such specifications often included schematic and/or conceptual drawings and identified the exact type and quantity of components desired, sometimes even specifying the component manufacturer.  He states that SD Corp. "primarily built equipment to customer specifications and there was little or no independent engineering or design work done" by SD Corp.

In opposition, CVD relies on the declaration of its employee John Garrett Dyal ("Dyal"), formerly President of SD Corp.  He avers that SD Corp. typically received business from customers by responding to a "request for quotation" sent by the customer.  A customer seeking custom equipment would sometimes provide schematic drawings with the request for quotation. If the customer did not provide schematic drawings, SD Corp. would develop such drawings in order to generate a quotation.  In either case, if SD Corp. was awarded the job, it would then prepare the requisite detailed manufacturing, assembly and layout drawings, because the schematic drawings were insufficient for manufacturing purposes.  These detailed drawings were proprietary to SD Corp.  If the customer ordered standard equipment, SD Corp. would use (and, if needed, modify) standard detailed drawings that SD Corp. had previously created.  Dyal adds that SD Corp. did extensive design work in developing its products, much of which was billed to the customer.

### 2. Whether the works were known outside SD Corp.'s business and whether SD Corp. took measures to guard the secrecy of the works

With respect to whether the works in issue were known outside SD Corp.'s business and whether SD Corp. took measures to guard the secrecy of the works, PFT relies on the declaration of Kevin Brady to the effect that it was common practice for works such as the drawings and software in issue to be freely exchanged throughout the industry and that SD Corp. regularly showed its products and equipment at trade shows and made its equipment available for unrestricted inspection at public auction. Donald J. Jackson, Sr. ("Jackson"), previously an officer, director and shareholder of SD Corp., makes similar averments in his declaration. And John Kopins, formerly with SD Corp., submits a declaration stating that vendors, including SD Corp., freely circulated drawings, software and operations manuals throughout the industry.

PFT further relies on the declarations of Kevin Brady, Stephen Brady, Jackson, and Gennaro G. Landisi, all of whom had been connected with SD Corp., stating that SD Corp. made a business policy decision not to treat the works as trade secrets; gave its customers unlimited access to SD Corp.'s drawings and software; delivered the equipment and related drawings, software, and operation manuals to its customers without restriction or limitation; intentionally took no measures to protect the works from access or review outside the company; and represented to third parties that the works were not confidential or proprietary. PFT also relies on a similar declaration from Donald G. Shaffer, who had worked for SD Corp. and for its customer Emcore Corp. ("Emcore"). Further, relying on provisions in various contracts between SD Corp. and its customers such as IBM[6] and Lucent, PFT contends that the drawings, icons, and software in issue were specifically declared non-confidential and non-proprietary.

---

[6]

Although PFT has withdrawn its claims based on misrepresentations allegedly made by CVD to IBM, evidence concerning transactions with IBM continue to be relevant with respect to SD Corp.'s customary conduct with its customers.

-13-

In opposition, Dyal states that it was common practice for companies to protect their works and that such works were not commonly exchanged throughout the industry.  Further, SD Corp. delivered equipment and related drawings, software, and operation manuals to its customers subject to non-disclosure agreements.  He adds that it was SD Corp.'s practice upon receipt of a purchase order to transmit to the customer a Sales Acknowledgment setting forth SD Corp.'s Standard Terms and Conditions.  The Standard Terms and Conditions included a provision that if SD Corp. "discloses or grants Buyer access to any research development, technical, economic or other business work or 'know how' of a confidential nature ... Buyer will not use or disclose any such work to any other person or company at any time, without [SD Corp.'s] prior written consent."

### 3. Whether the works were treated as confidential within SD Corp.

Another relevant factor is whether the works were commonly available to SD Corp.'s employees and whether they were treated as confidential within SD Corp.  Relying on the declaration from Kevin Brady, PFT avers that SD Corp. failed to confine the works to any physical location, provided no security with respect to their protection, and placed no limitation on employees' access to them.  Thus, according to PFT, SD Corp. "failed to create any atmosphere of secrecy and confidence in relation to the subject matter for which protection is sought."

In response, Dyal states that SD Corp.'s employees were required to sign standard employment contracts.  Such contracts imposed confidentiality restrictions by incorporating by reference "Appendix I."  Appendix I is a detailed, comprehensive eight-page agreement which includes a covenant not to disclose trade secrets and an acknowledgment that all knowledge and works acquired by the employee, and all concepts, ideas or inventions developed by the

employee, are and will remain the sole and exclusive property of SD Corp.

Standard employment contracts were signed by SD Corp.'s employees Kevin Brady on July 11, 1991; Terrence Brady on July 30, 1990; and Scott J. Fischer on July 26, 1990.  The fact that signed copies of Appendix I are missing from the employment contracts of Kevin Brady and Terrence Brady is not conclusive on the issue of whether SD Corp. required its employees to sign such confidentiality agreements, or, for that matter, on the issue of whether Kevin Brady and Terrence Brady themselves signed such agreements.  Other inconclusive record evidence on this issue includes the Settlement Agreement signed by Kevin Brady in 1997 when he left SD Corp., and the statement in Appendix I that SD Corp. documents containing trade secrets would be restricted even within SD Corp. by various means.

### 4. Whether CVD, SD Corp., or competitors placed value on the works

In support of its argument that CVD, SD Corp., and their competitors placed no value on the works in issue, PFT cites to Kevin Brady's statements that customers ordering custom gas and chemical delivery equipment typically provided the vendor with equipment specifications, including electronic drawings of the equipment to be manufactured, and to evidence that vendors, including SD Corp., freely circulated drawings, software, and operations manuals throughout the industry.

PFT also cites to the declaration of Jackson, who had been an officer, director, and shareholder of SD Corp., that he inventoried SD Corp.'s assets in late 1998 for purposes of obtaining financing or, failing that, maximizing the amount to be realized at a sale of SD Corp.'s assets.  According to Jackson, neither he nor anyone else at SD Corp. identified any copyrights, trade secrets, or proprietary information as assets having any value.

CVD claims that the works were valued by CVD, SD Corp., and others in the industry.

-15-

CVD relies in part on Dyal's evidence that such works were not freely circulated throughout the industry; that SD Corp. created the detailed technical drawings needed to manufacture equipment for its customers; and that it billed its customers for such work.

Further, Leonard Rosenbaum ("Rosenbaum"), CVD's President, testified at his deposition that, a couple of weeks before the Fleet National Bank auction of SD Corp.'s assets, Dyal (then SD Corp.'s President) gave him "a presentation on all of their products"; that Dyal told him "about all the products and the customers that they were selling to and what the intellectual property was"; and that Dyal represented that SD Corp.'s intellectual property comprised its "designs, drawings, [and] manuals."  Rosenbaum added that when he made the entirety bid for the assets, he was bidding on "all the intellectual property, the remaining hard assets, [and] the remaining inventory."  He further explains in his declaration that the intellectual property and intangible assets purchased by CVD at the auction were valuable because they enabled CVD to continue building equipment previously built by SD Corp., thus saving it the significant cost of recreating the designs and software, and permitting it to retain SD Corp.'s customers.

### *Protectable Interest in the Works – Conclusion*

It is obvious from this partial summary of the relevant record evidence that there are material questions of fact with respect to whether the works in issue were trade secrets or otherwise proprietary and confidential so as to support CVD's cause of action for unfair competition.  The record evidence, particularly the testimony of Kevin Brady and Dyal, presents questions of fact with respect to the extent to which SD Corp. prepared its own drawings as opposed to using drawings provided by customers, the measures SD Corp. took to protect its works, and the common practices within the industry.  Further, the effect of the contractual provisions relied on by the parties upon the works in issue cannot be conclusively determined on

-16-

this record, nor are the provisions conclusive on the questions of whether the works were commonly available to employees and whether they were treated as confidential within SD Corp. And the conflicting evidence, particularly that of Kevin Brady, Dyal, and Rosenbaum, creates questions of fact regarding the value of the works to CVD, SD Corp., and others in the industry.

### *Improper Use of the Works – Discussion*

PFT argues that, even assuming that CVD is able to prove that it possessed a protectable interest in the works, CVD's cause of action for unfair competition must be dismissed because the record establishes that PFT did not improperly use the works.  PFT bases its argument on the assertion that the works in issue were transferred without restriction by SD Corp. to its customers or were created by third parties, that PFT's customers properly transferred the works to PFT, and that therefore PFT's use of them was proper.

### 1. CVD's drawings

PFT argues that it has demonstrated that SD Corp. did not create the drawings that CVD has specified with respect to its unfair competition claims, *i.e.*, drawings pertaining to the Lucent Silane Delivery System, Lucent and IBM wiring diagrams and drawings, and four Emcore standard gas panel drawings.  With respect to the Lucent and IBM drawings, PFT avers that most of the drawings were created by third parties.  PFT further avers that SD Corp. provided the drawings to Lucent and IBM for specific jobs under circumstances establishing that they were not confidential or proprietary.  Thus, PFT contends, IBM and Lucent were free to provide the drawings to PFT, which was entitled to use them.  PFT further argues that, with respect to the four Emcore standard gas panel drawings, CVD has failed to show that any of its drawings, as opposed to Emcore's drawings, were used by PFT, and avers that when PFT does work for Emcore, it uses only Emcore's drawings.  PFT refers to evidence, including the deposition

testimony of its employees Scott Fischer and Kevin Brady, that PFT does not maintain electronic files of its drawings but instead receives drawings from its customers whenever needed, and that it returns everything, including the drawings, to the customer when the job is completed.

In opposition, CVD relies on evidence, including the declarations of Dyal and Rosenbaum, that SD Corp. created the subject drawings and that customers paid SD Corp. to perform such design work. Rosenbaum adds: "In reviewing documents within PFT job folders, I have found hundreds of drawings with SDC [*i.e.*, SD Corp.] title blocks and copies of hundreds of SDC drawings with PFT title blocks, thus showing significant if not complete copying of SDC drawings." He highlights a specific example by comparing a drawing created at SD Corp. for Emcore and a drawing used by PFT for Emcore.

CVD also relies on the declaration of its expert witness Anthony Carollo that the similarities between PFT's drawings relative to various IBM and Lucent projects and those of SD Corp. and CVD are "so extensive that it is [his] opinion that they are a result of direct copying by PFT and Mr. Kevin Brady." Carollo sets forth numerous examples with specific observations which support his opinions. And Paul J. Decker, senior mechanical engineer at CVD, submits a declaration stating that PFT's alleged practice of relying on drawings from customers is not customary in the industry, and explaining the basis for his opinion that PFT has copied numerous SD Corp. drawings.

CVD further adduces evidence, in particular the confidentiality language in its Sales Acknowledgment forms, that SD Corp. did not transfer rights in its drawings to its customers. As noted above, the effect of the contractual provisions relied on by PFT on the works in issue cannot be conclusively determined on this record. The Court cannot determine on this record whether use of the drawings by PFT was improper.

-18-

2. CVD's software and manuals

CVD alleges that an operations manual and various software programs were protectable as trade secrets or otherwise confidential and proprietary.  Software programs alleged to be confidential and proprietary include Silane Delivery System Software, IBM Silane System Software, Lucent Gas Cabinet Software, IBM Gas Cabinet Software, and IBM Touch Screen Software.  CVD relies on the expert witness report of Philip Lewis detailing alleged instances of PFT's copying of SD Corp.'s software.  CVD also adduces evidence that SD Corp. retained its interests in its software, including evidence that SD Corp.'s sale of Software Enhancements to Lucent in 1998 was made subject to a confidentiality and non-disclosure provision.  CVD further alleges that it owns a protectable interest in the SDC Silane Delivery System Operations Manual. Whether PFT's use of the works in issue was proper cannot be determined on this record.

However, in its proposed Amended Answer with Counterclaims and proposed Amended Complaint (Dkt. No. 114, Exh. A), CVD proposes to abandon copyright claims based on "Silane Delivery System Software" and "SDC Silane Delivery System Operations Manual."  Likewise, in its Memorandum of Law (Dkt. No. 24, p. 3) in a related case, Action No. 02-CV-651, *CVD Equipment Corporation v. Precisionflow Technologies, Inc., Kevin Brady, Christopher Joseph Schlenker, Scott Calabrese, Scott Fischer, Stephen Brady, and Terrence Brady*, CVD states:

> Though CVD originally asserted infringement of three of its copyrights by PFT, namely; (1) Silane Delivery System (Mechanical Drawings); (2) Silane Delivery System Software; and (3) SDC Silane Delivery System Operations Manual, subsequent discovery revealed that PFT had copied the drawings but copied a different manual and different software.

CVD does not address how this "subsequent discovery" affects so much of CVD's unfair competition claim as appears to be based on PFT's alleged copying of two of these works, *i.e.*, Silane Delivery System Software and the SDC Silane Delivery System Operations Manual.  The

-19-

Court assumes that CVD is withdrawing not only its copyright claims based on these two works, but also any unfair competition claims based thereon.  The Court deems them withdrawn unless within 30 days of the date of this Memorandum-Decision and Order, CVD files a letter clarifying that it is not withdrawing such claims and explaining the apparent contradiction.

### *Unfair Competition – Conclusion*

As set forth above, material questions of fact exist regarding CVD's claim of unfair competition.  Accordingly, the Court denies PFT's motion insofar as it seeks summary judgment dismissing CVD's third cause of action against Kevin Brady and its third counterclaim against PFT for unfair competition.

As stated, the Court assumes that CVD is withdrawing any unfair competition claims regarding Silane Delivery System Software and the SDC Silane Delivery System Operations Manual.  The Court deems them withdrawn unless within 30 days of the date of this Memorandum-Decision and Order, CVD files a letter clarifying that it is not withdrawing such claims and explaining the apparent contradiction.

**CVD's Cause of Action for Copyright Infringement – PFT's Motion to Dismiss**

CVD's first cause of action against Kevin Brady and first counterclaim against PFT assert that PFT infringed three of its copyrights, specifically Silane Delivery System Mechanical Drawings, Silane Delivery System Software, and the SDC Silane Delivery System Operations Manual.  However, as noted, it appears from CVD's proposed Amended Answer with Counterclaims and proposed Amended Complaint (Dkt. No. 114, Exh. A) and its memoranda of law in this case and a related case (02-CV-651, Dkt. No. 24, p. 3) that CVD has abandoned the copyright infringement claims herein insofar as they are based on the Silane Delivery System Software and the SDC Silane Delivery System Operations Manual.  Therefore, the only claim of

-20-

copyright infringement remaining in the case at bar is CVD's claim that PFT infringed its Silane Delivery System Mechanical Drawings.

PFT first argues that CVD's purchase of SD Corp.'s intellectual property and intangible assets at the Fleet National Bank auction failed to transfer SD Corp.'s copyrights to CVD because it did not satisfy the requirement that a transfer of copyright ownership be in writing.  *See* 17 U.S.C. § 204(a).  Courts have held that section 204(a) does not require the use of the word "copyright" in a contract to effect such a transfer.  *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992) (noting that, although the asset-transfer agreement did not use the word "copyright," its wording established that the seller transferred all assets, tangible and intangible alike, thus satisfying section 204(a)); *Shugrue v. Continental Airlines, Inc.*, 977 F.Supp. 280, 285 (S.D.N.Y. 1997); *see also Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 564 (2d Cir. 1995) (distinguishing *Schiller & Schmidt* on its facts).  CVD argues that the requirement of a writing is met in the case at bar by the auctioneer's signature on CVD's December 14, 1998 "Entirety Bid" for "the Assets, Intangible Assets and Intellectual Property" of SD Corp. and his December 15, 1998 letter memorializing his receipt of payment in full.  CVD points out that the security agreement between SD Corp. and Fleet National Bank specifically listed copyrights as collateral (Art.1(b)).  PFT is not entitled to dismissal of CVD's copyright claim on this ground.

PFT further contends, based on agreements with IBM and Lucent, that SD Corp. abandoned or forfeited any copyright interests it may have had.  CVD responds that the sales acknowledgments used by SD Corp. provided that the works in issue were proprietary and confidential.  CVD also refers to sections of the IBM Equipment Purchase Master Agreement and IBM's form purchase order and argues that they conveyed to IBM only limited rights in

-21-

copyrighted works.  It cannot be determined definitively on this record what effect, if any, these agreements have on CVD's claimed copyright interest in the Silane Delivery System Mechanical Drawings.  This issue cannot be resolved on summary judgment.

PFT also avers that CVD is not the author of the drawings for which it claims copyright ownership, the Silane Delivery System Mechanical Drawings, Reg. No. VAU456-436.  Again, the record evidence presents questions of fact on this issue.  More specifically, PFT contends that the drawings claimed to be infringed were not originally authored by SD Corp., but rather were obtained by SD Corp. from third parties such as IBM and other SD Corp. customers and vendors. In this respect, PFT relies on the declaration of Kevin Brady that the drawings in issue were provided to SD Corp. by its customers free of charge to enable SD Corp. to manufacture custom gas and chemical delivery systems.

In opposition, CVD refers to Dyal's declaration that SD Corp. did not obtain the disputed drawings from its customers, but rather did extensive design work for its customers, both in responding to the customer's request for a quotation and, if it was awarded the job, in performing the contract.  Indeed, according to Dyal, even when a customer did provide drawings, they lacked the requisite technical detail, and SD Corp. would be required to prepare drawings with the necessary manufacturing, assembly and layout details.  Questions of fact preclude resolution of this issue on this motion.

PFT's assertion that CVD has engaged in copyright misuse and fraud upon the Copyright Office depends at least in part on the resolution of the above questions of fact concerning CVD's rights in the Silane Delivery System Mechanical Drawings.  PFT is not entitled to summary judgment dismissing CVD's first cause of action against Kevin Brady and first counterclaim

against PFT for copyright infringement relative to the Silane Delivery System Mechanical Drawings.

**CVD's Claim for Tortious Interference with Prospective Business Relations – PFT's Motion to Dismiss**

Next, the Court considers PFT's contention that it is entitled to summary judgment dismissing CVD's fifth cause of action against Kevin Brady and fifth counterclaim against PFT for tortious interference with prospective business relations.  Under New York law, to make out a claim for tortious interference with prospective business relations, the plaintiff must show that it had business relations with a third party; that the defendant interfered with those business relations; that the defendant used wrongful means or acted with a wrongful purpose; and that the defendant's acts injured the relationship.  *See Scutti Enters., LLC. v. Park Place Entertainment Corp.*, 322 F.3d 211, 215 (2d Cir. 2003); *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 193-94 (1980).  The requirement of wrongful means or wrongful purpose where only prospective rights are threatened "honors free and lawful competition and accords an appropriate level of protection to a plaintiff's interest – by definition not its contract rights – in its expectancy of future benefits."  *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 624 (1996); *Guard-Life*, 50 N.Y.2d at 194.

CVD has adduced sufficient evidence to raise a question of fact regarding PFT's alleged fraud and interference with CVD's prospective business relationships.  Thus, summary judgment dismissing CVD's fifth cause of action against Kevin Brady and fifth counterclaim against PFT for tortious interference with prospective business relations is not warranted.

**CVD's Unfair Competition Claims – PFT's Motion to Dismiss on the Ground of Preemption**

PFT urges that CVD's third cause of action against Kevin Brady and third counterclaim against PFT for unfair competition are preempted by the Copyright Act. Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a), provides:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright ...whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Thus, section 301(a) preempts those state law rights that may be violated by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law. *See* 17 U.S.C. § 106*; Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992). To avoid preemption, the state law claim must include an extra element that makes it qualitatively different from a copyright infringement claim. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.* 373 F.3d 296, 305-06 (2d Cir. 2004); *Computer Assocs.*, 982 F.2d at 716-17. The *Computer Assocs*. court noted that "[t]rade secret claims often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material." *Id.* at 717. Such claims generally contain the extra element of breach of duty and confidentiality and are not preempted. *See id.*; *Briarpatch,* 373 F.3d at 306.

In its cause of action for unfair competition, CVD claims that it purchased SD Corp.'s confidential and proprietary works; that Kevin Brady and others at PFT gained knowledge of such works while working at SD Corp. under circumstances giving rise to a duty of confidentiality; and that Kevin Brady and others at PFT, with knowledge that SD Corp.'s interest in those works had been transferred to CVD, nevertheless used them in breach of their duty of confidentiality. On

-24-

the present record, there is conflicting evidence regarding the alleged "extra element" of breach of a duty of confidence by PFT. *See Briarpatch,* 373 F.3d at 305-06; *Computer Assocs.*, 982 F.2d at 717-18. Thus, the Court cannot hold as a matter of law that CVD's third cause of action against Kevin Brady and third counterclaim against PFT for unfair competition are preempted by the Copyright Act.

**CVD's Unjust Enrichment Claim – PFT's Motion to Dismiss on the Ground of Preemption**

PFT also urges that CVD's fourth cause of action against Kevin Brady and fourth counterclaim against PFT for unjust enrichment are preempted by the Copyright Act. To prevail on a claim for unjust enrichment in New York, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that the circumstances were such that in equity and good conscience the defendant should make restitution to the plaintiff. *See Kaye v. Grossman*, 202 F.3d 611, 615-16 (2d Cir. 2000). CVD's unjust enrichment claim is based on the allegation that, as a result of PFT's misappropriation of CVD's protectable works and breach of duty of confidence, PFT was unjustly enriched at CVD's expense. As with CVD's unfair competition claim, there is conflicting evidence regarding the alleged "extra element" of breach of a duty of confidence. *See Briarpatch*, 373 F.3d at 305-06; *Computer Assocs.*, 982 F.2d at 716-18. Accordingly, the Court cannot hold as a matter of law that CVD's fourth cause of action against Kevin Brady and fourth counterclaim against PFT for unjust enrichment are preempted.

**CVD's False Advertising Claim under Section 43(a) of the Lanham Act – Withdrawn**

CVD has withdrawn its second cause of action and second counterclaim based on false advertising under section 43(a) of the Lanham Act.

**CVD's Complaint Against Kevin Brady – Kevin Brady's Motion to Dismiss**

-25-

Kevin Brady argues that all CVD's claims against him in the member action (99-CV-2030) must be dismissed.  In his declaration, Kevin Brady states: "All of my activities in the Gas Delivery System industry after leaving [SD Corp.] were conducted as part of my duties as an officer and employee of PrecisionFlow Technologies."  He further states: "There has been no evidence in this case that I personally committed any acts of unfair competition, unjust enrichment, copyright infringement or interference with any business relations against CVD."  He points out that the expert report of CVD's expert Anthony Carollo simply refers to "copying by PFT and Kevin Brady," with no elaboration regarding Kevin Brady's alleged role.  When asked in his deposition whether there was anything in any of the documents he reviewed that "would indicate that Kevin Brady had done copying in particular[,]" Carollo replied: "I don't believe so."

In opposition, CVD contends that Kevin Brady is personally liable on the ground that he was the moving, active force behind PFT's alleged misconduct.  *See, e.g., Calvin Klein Jeanswear Co. v. Tunnel Trading*, 2001 WL 1456577, *6 (S.D.N.Y.); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899, 913-14 (E.D.N.Y. 1988).  In support of this contention, CVD states:

> [I]n this case, Kevin Brady is the President and major shareholder of PFT.  PFT sold infringing equipment at the direction of Kevin Brady.  Kevin Brady admitted contacting CVD's customer IBM and knowing that PFT was using old [SD Corp.] drawings to build equipment for Lucent and Emcore.

Kevin Brady's declaration states: "In March 1997 [SD Corp.] terminated my employment.  Shortly thereafter, I formed [PFT] to go into the Gas Delivery System business."  He testified at his deposition that in or about July 1997 he contacted Emcore and IBM, and Lucent contacted him.  He stated in his declaration that PFT has been awarded contracts from former SD Corp.

-26-

customers including IBM, Lucent, and Emcore, and he testified that he knew that PFT used old SD Corp. drawings in performing work for Emcore, although he states that PFT received the drawings from Emcore.  It also appears from his deposition that he knew that PFT was using SD Corp.'s software, although he avers that it was provided to PFT by e-mail from Lucent.  There is enough record evidence to require denial of the motion for summary judgment dismissing CVD's complaint against Kevin Brady (Action No. 99-CV-2030).

## II. PFT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; CVD'S CROSS MOTION TO DISMISS

**Generally**

PFT claims that it is entitled to partial summary judgment imposing liability on CVD for (1) false advertising under state and federal law (causes of action one, three, and five), and (2) tortious interference with contract and/or with prospective business relations under New York common law (causes of action eight and nine).  In its cross motion, CVD urges that it is entitled to dismissal of these claims as well as PFT's claim for injury to reputation under section 360-*l* of New York General Business Law (sixth cause of action).  CVD also argues that all of PFT's claims should be dismissed for lack of competent supporting evidence.

The Court first addresses PFT's state and federal false advertising claims and its state law claims for tortious interference.  With respect to these claims, PFT moves for partial summary judgment on liability against CVD, and CVD cross-moves for dismissal.  Next, the Court addresses CVD's cross motion to dismiss PFT's state law claim for injury to reputation under section 360-*l*.  Finally, the Court addresses CVD's cross motion to dismiss PFT's entire complaint on the ground of lack of competent supporting evidence.

-27-

**PFT's Causes of Action for False Advertising and Tortious Interference – PFT's Motion for Partial Summary Judgment and CVD's Cross Motion to Dismiss**

*PFT's State Law Claims for False Advertising*

PFT's complaint sets forth claims for false advertising under New York General Business Law, §§ 349 (fifth cause of action) and 350 (third cause of action).  To make out a claim under either section, a plaintiff must allege conduct that is consumer-oriented, that is, conduct which affects the consuming public at large.  *See Exxonmobil Inter-America, Inc. v. Advanced Information Eng'g Servs., Inc.*, 328 F.Supp.2d 443, 447-49 (S.D.N.Y. 2004); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320-21 (1995); *Northeast Wine Dev., LLC v. Service-Universal Distribs., Inc.*, 804 N.Y.S. 2d 836, 839 (3d Dep't 2005), *aff'd* 7 N.Y.3d 871, 873 (2006).  Here, the goods and services in issue are highly specialized and are marketed to a limited number of highly sophisticated technical companies.  It cannot reasonably be argued that Lucent is a consumer, *i.e.*, one who "purchase[s] goods and services for personal, family or household use[,]"  *Sheth v. New York Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (1st Dep't 2000), nor can it be said that allowing PFT to pursue these claims would comport with the statutes' "focus on consumers at large."  *Id.*  PFT's motion for partial summary judgment in its favor on these claims is denied.  CVD's cross-motion to dismiss PFT's third and fifth causes of action is granted.

*PFT's Claim for False Advertising under Section 43(a)(1)(B) of the Lanham Act*

With respect to PFT's federal false advertising claim (first cause of action), section 43(a)(1)(B) of the Lanham Act provides a civil cause of action to anyone injured or likely to be injured by another's conduct in making a false or misleading representation of fact in commercial advertising or promotion which "misrepresents the nature, characteristics, [or] qualities ... [of its]

or another person's goods, services, or commercial activities[.]"  15 U.S.C. § 1125(a)(1)(B).  PFT

contends that it has established its right to recover under this section by demonstrating that CVD

made at least one representation that was false on its face, causing PFT to lose business.  *See*

*Johnson & Johnson v. GAC Intern., Inc.*, 862 F.2d 975, 977 (2d Cir. 1988).  This claim is

discussed below along with the tortious interference claims; all three causes of action are based

on the same alleged events.

### *PFT's State Law Claims for Tortious Interference*

PFT argues that it is entitled to recover on its state law claims for tortious interference

with contract (ninth cause of action) and/or tortious interference with prospective business

relations (eighth cause of action).  To recover for tortious interference with contract under New

York common law, a plaintiff must establish that the defendant, having knowledge of a contract

between the plaintiff and a third party, intentionally induced the third party to breach the contract,

causing damages to the plaintiff.  *See Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).  An

essential element of this cause of action is the existence of a valid, enforceable contract between

the plaintiff and the third party.  *See id.*  Where, however, there is no such contract, a plaintiff

may be able to recover on the theory of tortious interference with prospective business relations.

To do so, the plaintiff must show not only that it was injured by the defendant's interference with

its business relationship with a third party, but also that the defendant used wrongful means or

acted with a wrongful purpose.  *See Scutti Enters.*, 322 F.3d at 215; *NBT Bancorp*, 87 N.Y.2d at

624.

### *Discussion – PFT's Federal False Advertising Claim and Claims for Tortious Interference*

In support of PFT's motion for partial summary judgment imposing liability on CVD on PFT's causes of action for false advertising under section 43(a) of the Lanham Act and tortious interference with contract and/or with prospective business relations under New York law, PFT contends that the record evidence establishes the following: that in July 1999 PFT bid on a job for Lucent for the sale of gas cabinet equipment; that Lucent awarded or would have awarded the contract to PFT; and that upon learning of PFT's bid and/or contract, CVD's president, Rosenbaum, contacted Icon Dynamics, Inc. ("Icon Dynamics"), Lucent's recommending consultant.  PFT further contends that it has established that Rosenbaum made the following representations to Icon Dynamics: that PFT could not provide the goods and services necessary under the contract with Lucent without infringing upon CVD's intellectual property; that CVD was commencing an infringement lawsuit against PFT concerning the subject matter of the Lucent contract and other prospective contracts; and that any party that contracted with PFT would also be subject to a lawsuit.

In its complaint, PFT claims that it would have been awarded the Lucent contract but for the statements by Rosenbaum; however, in its Statement of Material Facts, based on Kevin Brady's declaration, PFT claims that Lucent had actually awarded PFT the contract but then cancelled it as a result of Rosenbaum's statements.  PFT further contends that it has demonstrated that CVD has no relevant intellectual property; that when he made the statements on behalf of CVD, Rosenbaum knew CVD had no such intellectual property or acted in reckless disregard of the truth or falsity of the statements; and that Rosenbaum made the statements with the intent to

disparage PFT's goods and services and harm PFT's business and reputation.[7]

In support of its position, PFT relies in part on the deposition testimony of Kevin Collins, General Manager of CVD, that he had asked Rosenbaum, CVD's president, to speak with Icon Dyamics' president regarding "the potential order from Lucent" for gas cabinet equipment. Collins was concerned that Lucent would order equipment from PFT and that as a result CVD would "lose market share at Lucent Technologies."

Rosenbaum testified that when CVD was bidding on the Lucent job through Icon Dynamics, he telephoned James Rufe ("Rufe"), President of Icon Dynamics, "to advise him that if anyone interfered or infringed on our intellectual property, which I believed would occur, that I would take whatever appropriate actions we deem necessary." Rufe asked "whether that had to do with Lucent or Icon Dynamics[,]" to which Rosenbaum responded that "if anyone infringed ... we would take whatever appropriate actions we deem necessary." Rufe then asked if CVD was going to sue PFT. Rosenbaum replied that CVD "hadn't made the decision at this point[.]"

Rufe testified that Rosenbaum telephoned him and told him that "it was CVD's intention to file suit against PFT pertaining to intellectual property infringement," and that "depending on the outcome" of Lucent's request for quotation for the gas cabinet equipment, "Lucent and Icon could become involved in the planned suit." Rufe did not inform anyone at Lucent about the

---

[7]

In its discussion of these issues in its Memorandum of Law (Dkt. No. 82), PFT does not appear to rely on its claim that a vendor, Methods Tooling, Inc., refused to provide goods and services to PFT as a result of statements by CVD to the effect that legal proceedings against PFT would render PFT unable to pay for such goods and services. PFT has withdrawn its claims regarding IBM, the other customer specified in the complaint and Memorandum of Law. Thus, the Court assumes that PFT's motion for partial summary judgment on liability is based only on its relationship with Lucent.

conversation, but did inform others at Icon Dynamics, including Robert Osika.

The testimony of Robert Osika ("Osika"), who worked at Icon Dynamics at the relevant times, establishes that Icon Dynamics was Lucent's recommending consultant.  Although Robert Gore ("Gore"), a Lucent employee, had the authority to issue Lucent purchase orders, Osika had substantial involvement in Lucent's purchasing decisions.  Osika stated that one of the reasons the job in question was awarded to CVD was that he, Gore, and Rufe were concerned about "issues about licensing regarding the software."  Osika explained that Rufe told him that Rosenbaum had contacted him and "raised issue with ... a potential conflict with ownership of the software"; that Rufe asked Osika to "look into ownership of the software"; and that Rufe's request "prompted" Osika and Gore to "do a little investigation in-house to try to determine what the software ownership was."  After searching through records, they were unable to determine ownership of the software.  According to Osika, the issue of the ownership of the software "factor[ed] into Lucent's decision to award the work" to CVD.

PFT also relies on the declaration of Kevin Brady that, after PFT submitted a bid on the job in issue, Osika at Icon Dynamics told him Lucent "had awarded the job" to PFT.  Kevin Brady adds that, "[w]ithin a few days after Mr. Osika's verbal award of the contract, Mr. Osika advised me that Lucent had retracted the verbal award because of threats it received from high level CVD officers."

In opposition and in support of its cross motion to dismiss these causes of action, CVD argues that it has proven that Lucent awarded the job to CVD instead of PFT for a reason wholly unrelated to Rosenbaum's alleged threats to Lucent through Icon Dynamics.  CVD refers to the following testimony of Gore, the Lucent employee with the authority to issue the Lucent purchase

-32-

order in question: "[T]he choice was between [CVD] and PFT as far as the purchase goes.  There were issues with regards to price and also maintaining a platform of existing equipment that we had and also the issue of software came up.  And we decided to maintain the platform that we had and issue the order accordingly."  Gore also testified that he never heard anyone at CVD disparage PFT.  CVD further argues that PFT has no competent evidence to support its position, but rather relies only on hearsay.

While it is not clear on this record whether certain statements relied on by PFT are based on first-hand knowledge, there is sufficient competent evidence to permit a fact-finder to draw inferences supporting PFT's position.  Gore's testimony and the evidence relied on by PFT present material questions of fact, including what Rosenbaum said to Rufe, whether it was true or false, and whether it caused PFT to lose the Lucent job.  These questions of fact warrant denial of PFT's motion for partial summary judgment in its favor on its first cause of action (federal false advertising under section 43 of the Lanham Act), its eighth cause of action (common-law tortious interference with prospective business relations), and its ninth cause of action (common-law tortious interference with contract).  CVD's cross motion for summary judgment dismissing these causes of action is denied.

**PFT's Cause of Action for Injury to Reputation – CVD's Cross Motion to Dismiss**

CVD moves for dismissal of PFT's sixth cause of action for injury to business reputation. This claim is based on section 360-*l* of New York General Business Law, entitled "Injury to business reputation; dilution."  Section 360-*l* provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair

-33-

competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

In order to establish a claim for injury to business reputation or dilution under section 360-*l* of the General Business Law, a plaintiff must establish two elements: (1) a distinctive mark capable of being diluted, and (2) a likelihood of dilution. *See Savin Corp. v. Savin Group*, 391 F.3d 439, 455 (2d Cir. 2004); *Allied Maintenance Corp. v. Allied Mechanical Trades*, 42 N.Y.2d 538, 544-45 (1977) (construing section 360-*l*'s predecessor, section 368-d of the General Business Law).  PFT advances no such claim here.  PFT's sixth cause of action is dismissed.

**CVD's Cross Motion to Dismiss All PFT's Claims for Lack of Competent Evidence**

CVD argues that all causes of action in PFT's complaint must be dismissed on the ground that PFT does not have competent evidence of the occurrences which form the basis of its claims – *i.e.*, that CVD's president Rosenbaum told PFT's customers that PFT could not provide goods and services without infringing CVD's rights, that he told PFT's vendors that PFT would not be able to pay its bills, that such statements were false, and that such conduct caused PFT to lose business.

With respect to PFT's claims stemming from its alleged loss of the contract with Lucent due to Rosenbaum's telephone call to Rufe at Icon Dynamics, the Court has already summarized the evidence and concluded that there are questions of fact precluding summary judgment dismissing the claims.  PFT has withdrawn its claims regarding IBM.

The only claim asserted by PFT that the Court has not yet addressed is the claim set forth in PFT's complaint that a vendor, Methods Tooling, Inc. ("Methods Tooling"), refused to provide goods and services to PFT as a result of statements made by a representative of CVD that legal

-34-

proceedings against PFT would render PFT unable to pay.  CVD contends that there is no evidentiary support for this claim.

In his deposition, Keith Michaels at Methods Tooling stated that someone at CVD told him that "CVD took over [SD Corp.] and they are looking into suing PrecisionFlow."  Michaels further stated that no one at CVD ever told him not to do business with PFT or that PFT would not be able to pay its bills.  Nor did Michaels ever say that he wouldn't do business with PFT.  According to Michaels, Methods Tooling did business with PFT until the beginning of 2000.  Rosenbaum's declaration supports Michaels' testimony.

PFT does not adduce any evidence in support of the averment in its complaint that CVD told Methods Tooling that PFT would not be able to pay its bills.  Nor is there evidence that any statement by CVD to Michaels or anyone else at Methods Tooling caused PFT to lose any business with Methods Tooling.  The evidence, viewed in a light most favorable to PFT, does not support a finding that any improper conduct of CVD caused PFT to lose business with Methods Tooling.  Summary judgment is granted dismissing PFT's claims connected with Methods Tooling.

## CONCLUSION

It is therefore

ORDERED that the motion (Dkt. No. 81) by PrecisionFlow Technologies, Inc. and Kevin Brady is denied; and it is further

ORDERED that the cross motion (Dkt. No. 105) by CVD Equipment Corporation for summary judgment dismissing all claims by PrecisionFlow Technologies, Inc. is granted to the extent that PrecisionFlow Technologies, Inc.'s claims under sections 349, 350, and 360-*l* of New

York General Business Law (causes of action three, five and six) and any claims connected with Methods Tooling, Inc., are dismissed, and the cross motion is otherwise denied; and it is further

ORDERED that  CVD's second cause of action and second counterclaim based on false advertising under section 43(a) of the Lanham Act are withdrawn; and it is further

ORDERED that CVD Equipment Corporation's claims and counterclaims regarding Silane Delivery System Software and the SDC Silane Delivery System Operations Manual are deemed to be withdrawn unless within 30 days of the date of this Memorandum-Decision and Order, CVD files a letter clarifying that it is not withdrawing such claims and explaining the apparent contradiction in its papers regarding these works; and it is further

ORDERED that CVD has abandoned any claim regarding an IPA reprocessor; and it is further

ORDERED that PrecisionFlow Technologies, Inc. has withdrawn all claims connected with International Business Machines.

IT IS SO ORDERED.

March 19, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge